## GEESE v MURPHY et

Ohio Probate Court, Tuscarawas Co

Decided March 9, 1937

Seikel, Seikel & Seikel, Dover, for plaintiff.

Wilkin, Fisher & Limbach, New Philadelphia, A. B. Cunningham, New Philadelphia, J. E. Patrick, New Philadelphia, Paul F. Reed, Urichsville, J. S. Hare, Urichsville, and Holliday, Grossman & McAfee, Cleveland, for various defendants.

## OPINION

By LAMNECK, J.

Sarah L. Murphy died intestate on May 9, 1935, leaving Abner Murphy her surviving spouse. On November 7, 1935, Josephine Geese was appointed administratrix of her estate, and thereafter filed a proceeding to sell the decedent's real estate to pay her debts, which is the subject of this action. The surviving spouse; the next of kin; The Kentucky Joint Stock Land Bank of Lexington, Kentucky; John Rogers; The Ridgway Company; The Twin

City Chattel Loan Company; Nina E. Elliott; Samuel Decker; The Ohio Power Company; The East Ohio Gas Company; and Lloyd Murphy, were made parties defendant.

The Ohio Power Company has an easement over, and The East Ohio Gas Company has an oil lease on, said premises, about which there is no contention.

The Ridgway Company obtained a judgment against the deceased on January 20, 1930, in the sum of $213.00, for which a levy was made on July 27, 1933.

John Rogers obtained a judgment against the deceased on April 9, 1934, for $324.69, and a levy was made on the same day.

The deceased and her husband executed a note for $1,200 secured by mortgage on the premises on February 28, 1935, to Lloyd Murphy. This mortgage was recorded on March 1, 1935.

The foregoing judgments and mortgage are recognized by the parties as subsisting liens on the premises as of the dates specified.

On December 16, 1932, The Kentucky Joint Stock Land Bank of Lexington, Kentucky, started an action in the Common Pleas Court of this county to foreclose a mortgage against the deceased and her husband on another parcel of real estate. In this action, The Twin City Chattel Loan Company was made a party defendant. In the petition, the following allegation appears relative to The Twin City Chattel Loan Company as a party defendant:

"Plaintiff states that the defendant, The Twin City Chattel Loan Company, is claiming some lien upon or interest in said property, and that it should be required to answer herein and set up its lien or claim against same, if any it has, and that there are no other liens against the property herein described known to the plaintiff except the lien for taxes."

On January 4, 1933, The Twin City Chattel Loan Company filed the following answer in that action:

"Now comes The Twin City Chattel Loan Company, and for answer to plaintiff's petition says that it has a mortgage on the premises described in plaintiff's petition, assigned to it by Elias F. Utterback on January 31, 1924. Said mortgage is duly filed and recorded and is to secure a note given by Sarah L. Murphy and Abner N. Murphy to the said Elias F. Utterback dated April 18, 1923. There is a balance due plaintiff on said note of $385, and interest

from February 1, 1932, $401.71, making a total of $786.71, all of which is due and unpaid, and the mortgage is a valid and subsisting lien upon the premises described in plaintiff's petition, a copy of said note and mortgage are attached hereto and made a part hereof. Wherefore, this answering defendant prays that its interest in said premises may be protected by the court and that it share in the proceeds of sale according to its interest therein as determined by the court."

On September 18, 1933, a decree in foreclosure was entered and in relation to the claim of The Twin City Chattel Loan Company the court made the following order:

"And this cause coming on for further hearing upon the answer and cross petition of The Twin City Chattel Loan Company, and the evidence, the court finds, on consideration thereof, that the allegations therein contained are true, and that there is due the said The Twin City Chattel Loan Company from the defendants, Sarah L. Murphy and Abner N. Murphy, upon the promissory note and mortgage therein set forth, the sum of $786.71, with interest from the 29th day of December, 1932 at the rate of 36% per annum, and which judgment is awarded, and that the mortgage securing the same is a good and valid lien, and the second best lien upon the premises described in the petition."

Thereafter the premises were sold, and on February 26, 1934, a decree of confirmation entered, which set up a deficiency judgment to the Kentucky Joint Stock Land Bank of Lexington for $313.98. The Twin City Chattel Loan Company was not paid anything on its claim in that proceeding.

Under its deficiency judgment, the Kentucky Joint Stock Land Bank of Lexington made a levy on the premises sought to be sold in this action, under date of February 26, 1934.

On January 28, 1935, The Twin City Chattel Loan Company had a levy made on the same premises, on the judgment entered in its favor in the foreclosure proceeding in the Common Pleas Court.

It is now contended that the judgment in favor of The Twin City Chattel Loan Company is void on its face as a lien against the premises sought to be sold in the proceeding because it failed to cause summons to be issued when it filed its answer in the foreclosure proceeding.

As between defendants, a defendant

properly served is in for every purpose connected with the action, and this applies to all matters brought in question by the petition. However, if affirmative relief against a co-defendant is asked as to matter different from that sought in the petition, a summons must be issued on the cross petition. (**Southward v Jamison, 66 Oh St 290, 64 NE 135**).

The only allegation in the petition relative to The Twin City Chattel Loan Company was that it "is claiming some lien upon or interest in said property, and that it should answer herein and set up its lien or claim against same, if any it has." A personal judgment against the deceased was not a matter in the petition. There is no prayer in the cross petition asking for a personal judgment against the deceased. No amendment to the petition or answer of The Twin City Chattel Loan Company was filed in the case. While a defendant is bound to take notice of all proceedings in an action brought in issue by the petition, he is not bound to keep watch for new causes of action to which he was not summoned to answer. So long as a cross petition is strictly confined to matters in question in the petition, the summons issued on the petition would be sufficient to sustain a judgment on the cross petition. But, where a cross petition seeks affirmative relief against a co-defendant, of a nature entirely different from that sought in the petition, a summons must issue upon said cross petition before a court can enter judgment upon matters not brought in question by the petition.

In the foreclosure proceedings in the Common Pleas Court, The Twin City Chattel Loan Company failed to do two things which are essential to entitle it to a personal judgment against the deceased. First, it neglected to pray for a personal judgment; second, it neglected to have summons issued on its answer if such a prayer had been included.

The personal judgment rendered by the Common Pleas Court in the foreclosure proceedings in favor of The Twin City Chattel Loan Company against the deceased is therefore void on its face and cannot be given consideration in the proceeding. It must be relegated to its position as a general claimant according to the finding in its favor on the hearing on the Schedule of Debts filed in the estate by the administratrix.

The Kentucky Joint Stock Land Bank of Lexington, Kentucky, having prayed for a personal judgment against the defendant in its petition filed in the foreclosure proceeding, the personal judgment rendered in its favor is a valid and subsisting lien against the premises sought to be sold in this proceeding as of February 26, 1934, the date judgment was rendered and a levy made.

One of the most important issues raised in this action relates to the claim of Samuel Decker.

The undisputed evidence shows that on March 21, 1932, the deceased with her husband signed a note for $1,100 in favor of Nina E. Elliott. This note was intended to be secured by mortgage, in which the husband released his dower, but in executing the mortgage only one witness was secured instead of two as required by statute. The alleged mortgage was later recorded with the knowledge of the deceased and her husband. Samuel Decker furnished the funds on which the note and alleged mortgage were based and kept the note and alleged mortgage in his possession. Later, the note and mortgage were endorsed to him by the said Nina E. Elliott. The reason given by Samuel Decker for placing the note and alleged mortgage in the name of Nina E. Elliott, who is a distant relative, was that he intended to make her his heir at his death. This reason is undisputed. Since Samuel Decker never delivered the note and alleged mortgage to Nina E. Elliott, for the purpose of this proceeding it can be considered that they were originally executed in the name of Samuel Decker. (**Flanders v Blandy, 45 Oh St 108, 12 NE 321; Bank v Brown, 27 O.L.R. 661**).

Generally, an alleged mortgage deed which is not executed in accordance with the statutes is not entitled to record, and if recorded it constitutes no notice to persons subsequently dealing with the lands even though they have actual knowledge of its existence. But, as between the parties it will be considered as a contract to make a mortgage and will be enforced as between the parties, their executors, administrators, heirs or devisees. (**27 Ohio Jur.** 325).

As to the judgments of The Ridgway Company, John Rogers, and The Kentucky Joint Stock Land Bank of Lexington, this defectively executed mortgage loses its priority.

However, a different situation obtains as to the mortgage given to Lloyd Murphy for $1,200, in which the spouse relinquished dower, dated February 28, 1935, and recorded March 1, 1935. In the habendum clause of that mortgage there is contained the following exception: "Excepting taxes and assessments now a lien on said premises and also a certain mortgage held by Nina E. Elliott on said premises."

An instrument cannot be construed to include that which is forbidden by the terms of the instrument itself. When a mortgage in either the granting or habendum clause is made subject to a prior mortgage, the prior mortgage has a priority even though defectively executed, because all that is mortgaged in the latter instrument is the equity of redemption. (Coe v Railway, 10 Oh St 372; Bercaw v Cockrell, 20 Oh St 163).

Abner Murphy, the surviving spouse of the deceased, has since remarried, and is occupying the premises sought to be sold in this proceeding. What are his rights relative to dower, homestead and property not claimed assets? As to the judgments, the surviving spouse would be entitled to dower on the amount of the judgments and not exceeding the sale price of the property, because dower still exists as to judgments in which the spouse has not relinquished dower. If the sale price exceeds the judgments, then dower is computed on the amounts of the judgments. If the judgments exceed the sale price, then dower is computed on the sale price. (Dillman v Warner, 54 Oh Ap 170, 20 Abs 459). Such dower has a preference over the judgments. However, wherever there are subsisting mortgages in which the surviving spouse relinquishes dower, over which judgments have a priority, then the dower right is subject to the payment of the mortgages. In such cases the dower interest must be paid to the mortgagees in their order of priority to the extent that the same is necessary to satisfy the mortgages, because of the conveyance of the spouse of his inchoate dower right to the mortgagees. Such dower interest has a preference over the judgments.

Although this property was the homestead of the deceased and her husband, we know of no provision of law which would entitle the husband to a homestead allowance out of his wife's property. It is not authorized by either §§10504-32, 11730, 11732, 11733, or 11737, GC. §11738 GC, if applicable, is limited to property which is owned by the spouse in his or her own right. (Dillman v Warner, 54 Oh Ap 170). The fact that the spouse has remarried does not enlarge his homestead rights except as to property owned in his own right.

The allowance made to the surviving spouse under the provisions of §10509-54, GC, while a lien on the land, is subject to the claims of all other secured creditors. (Dillman v Warner, 54 Oh Ap 170). All judgments and mortgages therefore have a priority over such allowance.

It will therefore be ordered that out of the proceeds of the sale in this proceeding, which is subject to the easement of The Ohio Power Company and the lease of The East Ohio Gas Company, that distribution be made as follows:

(1) Court costs and costs of sale.

(2) Fees of the attorney for administratrix.

(3) Administratrix's fees.

(4) Taxes.

(5) Dower, to be computed on the amount of the judgments hereinafter listed if the sale price exceeds the judgments. If not, to be computed on the sale price. (Such dower to be paid to the mortgagees hereinafter listed in their order of priority to the extent that the same may be necessary to satisfy such mortgages. Any part thereof not necessary to satisfy mortgages hereinafter listed, to be paid to Abner Murphy, surviving spouse).

(6) Judgment of The Ridgway Company in the sum of $313.98 with interest at the rate of 6% from January 20, 1930.

(7) Judgment of the Kentucky Joint Stock Land Bank of Lexington, Kentucky, in the sum of $313.98 with interest at the rate of 6% from February 26, 1934.

(8) Judgment of John Rogers in the sum of $324.69 with interest at the rate of 6% from April 9, 1934.

(9) Note and mortgage of Samuel Decker in the sum of $1,100 with interest at the rate of 7% from March 21, 1932, including any right under item 5.

(10) Note and mortgage of Lloyd Murphy in the sum of $1,200 with interest at the rate of 4% from February 28, 1935, including any right under item 5.

(11) Statutory set-off of Abner Murphy under §10509-54, GC in the sum of $520.

(12) General creditors.